BALDOCK, Circuit Judge,
dissenting in part and concurring in part:
The Court’s opinion properly emphasizes that district courts have wide discretion in fashioning a remedy for a violation of the Lanham Act. An accounting of profits is not automatic but must be granted in light of equitable considerations. Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 *1059 (9th Cir.1993). The district courts, however, must carefully fashion remedies that take all the economic incentive out of deliberate trademark infringement. Playboy Enter., Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1275 (9th Cir.1982). For an infringer to reap the benefits of a trademark it has knowingly and intentionally stolen, and continued to use despite the lawful registrant’s objection, and then escape payment of damages because the registrant suffered minimal actual damages hardly seems equitable. Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 123 (9th Cir.1968). Accordingly, I respectfully dissent from Part A of the Court’s opinion addressing the damage award in this case. I concur in Part B.
I.
Unjust enrichment is a well-established theory of recovery for trademark infringement in this Circuit. In Bishop I, we explained that “[t]he infringer’s use of the markholder’s property to make a profit results in unjust enrichment that may properly be remedied through an award of profits, ‘even if the defendant and plaintiff are not in direct competition.’ ” Bishop, 154 F.3d at 1223 (quoting Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 585 (5th Cir.1980)); see also Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354, 363 (10th Cir.1954) (an infringement can occur although the owner of the mark was not doing business in the market where the infringement occurred). “ ‘[A] trademark infringer is hable as a trustee for profits accruing from his illegal acts.’ ” Bishop, 154 F.3d at 1223 (quoting Blue Bell Co., 213 F.2d at 362-63). The dollar amount of the recovery in an accounting for profits under the unjust enrichment rationale bears no relation to the damages, if any, sustained by the plaintiff in the action. Maier Brewing Co., 390 F.2d at 124.
With regard to an award of profits based on the theory of unjust enrichment, the district court rejected “the notion that prevention of unjust enrichment is a sufficient rationale for awarding profits.” By itself, this is an incorrect statement of the law. The district court presumably, however, intended this statement to apply only to the circumstances of this case because the district court referred to its findings that Plaintiffs mark is weak, no consumer confusion or deception exists, and Defendant did not benefit from Plaintiffs mark. The district court specifically found that “Defendant did not benefit from Plaintiffs ‘relatively obscure’ mark.” In this case, the district court essentially concluded that because Defendant’s actions did not divert sales away from Plaintiff, Defendant was not unjustly enriched. Yet, the diversion of sales is not a requirement in applying an unjust enrichment theory. Bishop, 154 F.3d at 1223.
The Court refers to Plaintiffs request for damages as a “windfall judgment.” An award of Defendant’s profits cannot be considered a “windfall” when authorized by statute. See 15 U.S.C. § 1117(a). Clearly, if no competition exists between the parties, no diversion of customers and sales can exist. We have previously held, however, that competition is not a prerequisite to recovery of profits. See Bishop, 154 F.3d at 1223; accord Maier Brewing Co., 390 F.2d at 122 (“those courts which treat an accounting solely as a method of compensating for the diversion of customers fail to fully effectuate the policies of the Act”). Defendant has taken Plaintiffs property as represented by his trademark and apparently utilized this property to make a profit. If permitted to retain the profit resulting from the illegal use of Plaintiffs trademark, Defendant is unjustly enriched.
II.
In Bishop I, we also established that deterring willful infringement is an appro *1060 priate basis for an award of profits in this Circuit. Bishop, 154 F.3d at 1224. A finding of willfulness or bad' faith is a prerequisite to an award of profits based on the deterrence theory of recovery. Id. We noted in Bishop I that “[t]he findings of fact recite that Equinox may have acted with the degree of willfulness necessary for an award of profits.” Id. On remand, the district court held that its award of $100,000 in attorney fees was a sufficient deterrent and refused to award profits to Plaintiff.
In its original findings of fact, the district court concluded that Defendant’s failure to honor the cease and desist agreement “constituted a trademark infringement which was deliberate or willful.” [1] On remand, the district court attempted to mitigate this finding, noting that the bad faith was limited solely to Defendant’s failure to honor the agreement. Defendant’s actions, however, clearly support a finding of willful infringement especially in light of the district court’s additional finding that Defendant premised its decision to continue using Plaintiffs trademark on “the economic weakness of the Plaintiff.” Moreover, the district court found that this was an “exceptional case” justifying an award of attorney fees. An “exceptional case” is “one in which the trademark infringement can be characterized as ‘malicious, fraudulent, deliberate, or willful.’ ” Bishop, 154 F.3d at 1224 (quoting VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1107 (10th Cir.1982)). The record reflects that Defendant’s course of conduct constituted a callous disregard for the rights of a trademark owner. Consequently, I would require that the district court instruct Defendant to make a full accounting before deciding whether an award of profits is an appropriate remedy in this case.
III.
Given the evidence of Defendant’s willful infringement of Plaintiffs trademark and Defendant’s decision to continue its infringement due to Plaintiffs economic weakness, the district court may have abused its discretion by not awarding some portion of Defendant’s profits to Plaintiff. “[T]he monetary relief must be great enough to further the statute’s goal of discouraging trademark infringement but must not be so large as to constitute a penalty.” Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1349 (7th Cir.1994). The Lanham Act, however, specifically states,
if the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.
15 U.S.C. § 1117 (emphasis added).
The district court reasoned that “the award of attorney fees is a sufficient deterrent under these circumstances.” I cannot definitively resolve this question, however, because, in my opinion, the record is not sufficient for us to evaluate properly whether an additional award of’ profits *1061 based on deterrence is appropriate. Although the district court ordered briefing on the issue of Plaintiffs entitlement to profits, the court did not hold an evidentia-ry hearing to determine the amount of Defendant’s profits attributable to the sale of “Essence of Life.”
Most troublesome is the district court’s refusal to allow discovery to accurately determine the amount of Defendant’s profits at issue. Surely, the total amount of profits involved is an equity the district court must consider. See Bishop, 154 F.3d at 1224 (directing the district court to “fashion a remedy that will satisfy the equities of the case”). Although neither party specifically addresses on appeal the amount of profits at issue, the portions of the record available to us seem to indicate that very large sums of money could be at stake.[2] We simply cannot determine the amount of an appropriate award of profits, if any, without specific evidence of Defendant’s profits during the entire time of the infringement. Additional discovery is necessary regarding the amount of Defendant’s profits for the entire duration of the infringement. Only after considering this additional evidence can the district court properly decide whether an award of profits is appropriate in this case.
IV.
Finally, I strongly disagree with the Court’s reliance on Defendant’s current legal status as a basis for its decision. The fact that Defendant is now in receivership should not, to Plaintiffs detriment, insulate Defendant from the consequences of its illegal actions. The Court notes that “[prolonging this litigation will simply increase [Defendant’s] expenses, which will then be paid indirectly by [Defendant’s] other creditors in the form of decreased disbursements.... ” Our duty, however, is not to protect potential creditors, our duty is to ensure that this case is handled properly from start to finish in accordance with the law. Remanding the case back to the district court may not be “practical,” but expedience does not trump ensuring that established rules of law are followed. Defendant’s actions were not just “inappropriate,” they were willful, deliberate and illegal. Accordingly, I would vacate the district court’s order denying an award of profits and remand for further proceedings.

. Plaintiff notified Defendant by letter dated February 22, 1995, that Defendant was infringing upon Plaintiff's registered "Essence of Life” trademark. In the letter, Plaintiff requested that Defendant cease and desist from further infringement. Defendant’s attorney responded by letter dated June 1, 1995, stating that Defendant would voluntarily refrain from using the name "Essence of Life" on their products. Defendant, however, continued to market products using the phrase "Essence of Life.” Plaintiff ultimately filed suit on January 3, 1996.

. The record indicates that from 1994 through December 1996, Defendant's gross profits resulting from the sale of "Essence of Life” were over $16 million dollars. In addition, the district court refused to allow further discovery of Defendant’s profits for 1997, so those profits presumably are not included in the $16 million dollar figure.